**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Patterson Dental Company,
a Minnesota Corporation,

Civil File No. 01-163 (MJD/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Welch Allyn, Inc.
a New York Corporation,

Defendant.

---

Jeffrey F. Shaw, Briggs and Morgan, P.A. for and on behalf of Plaintiff Patterson Dental Company.

Deborah H. Karalunas, Bond, Schoeneck & King, P.L.L.C., and David A. Allgeyer, Mark R. Privatsky, Lindquist & Vennum, P.L.L.P. for and on behalf of Defendant Welch Allyn, Inc.

---

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Defendant moves the Court for summary judgment on Plaintiff's claims. In the underlying complaint, Plaintiff alleges: 1) breach of contract relating to the 1994 Agreement regarding Reveal products; 2) breach of contract with respect to the products of Kreativ, Inc.; and 3) breach of good faith and fair dealing for both the Reveal and Kreativ products. Defendant also moves the Court for summary judgment on its counterclaims. Defendant alleges: 1) breach of contract of the 1994 Agreement; 2) breach of contract related



FILED 3-21-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

to the 1999 Correspondence; and 3) failure to pay account stated. For the reasons that follow, the Court denies Defendant's motion.

## II. BACKGROUND

Defendant Welch Allyn, Inc. ("Welch Allyn") is a manufacturer of dental and medical products. It sells products worldwide. Plaintiff Patterson Dental Company ("Patterson") is a distributor of dental equipment, supplies and services in the United States and Canada.

Welch Allyn manufactured the Reveal dental camera system ("Reveal Platform"), an intra-oral video imaging device. In January 1994, Patterson and Welch Allyn entered into a mutually exclusive distributorship agreement ("1994 Agreement"). The 1994 Agreement governed the distribution terms for the Reveal dental camera system and "all additions thereto, improvements and modifications" manufactured by Welch Allyn. The 1994 Agreement made Patterson the exclusive distributor of the Reveal Platform in the United States and Canada, and in turn Patterson agreed not to distribute or sell other intra-oral video imaging products manufactured by any other company.

Paragraph 16.1 of the 1994 Agreement provided that the parties could terminate the agreement on the following conditions: 1) 90-days written notice, if given prior to the expiration of any initial term or renewal term; 2) mutual agreement; or 3) upon 30-days notice following either bankruptcy proceedings or failure to cure any default brought to the other party's attention by written notice.

The parties also agreed to a minimum purchase quota. The 1994 Agreement could only be amended by a writing signed by all parties. The 1994 Agreement was never amended by a writing to add Kreativ, Inc. ("Kreativ") as a party or to include any Kreativ products, nor was the 1994 Agreement amended by a writing to include DenLite, Reveal Solo, or the Reveal X-Ray.

Welch Allyn expanded its line of dental products and its operations between 1996 and 1999, introducing three new products to the market. DenLite, a disposable illuminated dental mirror was introduced in 1996. In 1999 two new products were introduced: the Reveal X-Ray, a filmless x-ray device that could be used with the Reveal Platform, and the Reveal Solo, a dental camera. In 1999, Welch Allyn acquired Kreativ, Inc., an Oregon corporation. Kreativ was, and remains, a separate corporation. Patterson sold and promoted Kreativ products following the acquisition.

In August 1999, Patterson notified Welch Allyn that it intended to sell competitive dental cameras. By October 1999, Patterson stopped dealing exclusively with Welch Allyn and began to sell competitors' dental cameras.

In late August and early September of 1999, Brian Watson ("Watson") of Patterson and Michael Stone ("Stone") of Welch Allyn exchanged e-mail correspondence. The correspondence resulted in an understanding that Patterson would exclusively display Welch Allyn's cameras at dental conventions, and purchase a minimum of $1.5 million as a monthly average in retail dental cameras.

Defendant asserts that the 1999 correspondence constituted a new agreement, but did not contain a duration term, and was therefore terminable at the will of any party without notice. Plaintiff asserts that Watson viewed the resulting agreement as an amendment or modification of the 1994 Agreement. Plaintiff further asserts that there is a question of fact as to whether the e-mail correspondence constitutes an amendment or change to the 1994 Agreement.

Following the correspondence between Watson and Stone, Welch Allyn claims that Patterson's purchases of Welch Allyn cameras fell far short of the requisite $1.5 million per month agreed to in the 1999 correspondence. Welch Allyn claims that in 1999 and 2000, its dental business was distressed and not profitable. It attributes at least part of the cause to Patterson's decreasing sales of the Reveal Platform. Welch Allyn further claims that Patterson did not increase its sales of the Reveal Platform, despite repeated requests by Welch Allyn to do so, and that it displayed competitive dental cameras at dental conventions.

Several Welch Allyn executives met with Patterson executives to communicate their disappointment in the Reveal Platform sales, as well discuss its own precarious business situation. Welch Allyn claims that Patterson would not give a sales commitment at any of those meetings. Welch Allyn asserts that it informed Patterson that it intended to restructure or sell its dental business.

On December 15, 2000, Welch Allyn orally advised Patterson of its intent to discontinue sales and marketing activities associated with various dental products, including Kreativ's dental product line. A letter with the same

information was sent on December 20, 2000. Welch Allyn maintains that it also made clear to Patterson, however, that it would have the production capability to fill any orders submitted by Patterson for 2001. Thereafter, Welch Allyn claims that Patterson failed to purchase any additional products from Welch Allyn and cancelled several outstanding orders. In addition, Welch Allyn claims that beginning in December 2000, Patterson stopped paying for purchased products, in the amount of $936,611. Welch Allyn claims it suffered further damage to sales because Patterson told dentists that Welch Allyn was going out of business, and that replacement parts were not longer available for Welch Allyn products.

Patterson admits that it received Welch Allyn products invoiced at the approximate amount that Welch Allyn asserts in its account stated claim. However, Patterson asserts that, pursuant to the 1994 Agreement, Welch Allyn was to repurchase from Patterson, at Patterson's invoice cost, any new and unused products in Patterson's possession that had been received by Patterson within 90 days prior to termination the agreement. Patterson asserts that it attempted to return its unused product, but that Welch Allyn refused to accept it.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The

nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957. The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

### B. Timeliness of Defendant's Motion

As an initial matter, Patterson asserts that Welch Allyn's motion for summary judgment is untimely and should be denied on this basis alone. Patterson relies on the Pretrial Order, entered May 1, 2001, which provides that dispositive motions must be "scheduled, filed and heard" prior to September 1, 2002. Patterson seizes upon the "heard" requirement, arguing that, because Welch Allyn failed to secure a hearing date prior to September 1, 2002, its motion fails to meet the express requirements of the Pretrial Order and must therefore be dismissed. This argument is without merit. Welch Allyn sought and received an extension of the dispositive motion deadline to October 18, 2002, and the motion hearing was held on October 18, 2002.

**B. Plaintiff's Claims**

Patterson states three claims against Welch Allyn: 1) Breach of Contract of the 1994 Agreement regarding Reveal Products; 2) Breach of Contract regarding Kreativ products; and 3) Breach of Good Faith and fair Dealing for Kreativ and Reveal products. The crux of Patterson's claims is that Welch Allyn failed to provide sufficient notice of its intent to discontinue sales and marketing activities associated with various dental products.

The Court notes that there are sharp factual disputes between the parties on each of Patterson's claims. Without engaging in an exhaustive recitation of the material disputes, the Court concludes that viewing these disputes in a light most favorable to Patterson, would enable a reasonable fact finder to decide in Patterson's favor. Thus, the Court is presented with genuine issues of material fact sufficient to preclude Welch Allyn's summary judgment motion regarding Patterson's claims.

**C. Defendant's Counterclaims**

Welch Allyn asserts three counterclaims against Patterson: 1) Breach of Contract under the 1994 Agreement; 2) Breach of Contract relating to the terms agreed to in the 1999 correspondence; and 3) Patterson's failure to pay account stated. The crux of Welch Allyn's counterclaim is that Patterson owes $936,611 for products sold to, delivered to, and accepted by Patterson. Welch Allyn also asserts that it was damaged by Patterson's decision to sell competitive dental cameras, its failure to use its best efforts to promote the Reveal camera, and its

making of false statements to dental end users concerning Welch Allyn and its products.

Welch Allyn's counterclaims are related to Patterson's claims. As with Patterson's claims, numerous factual disputes exist between the parties. Construed in a light most favorable to Patterson these factual disputes raise genuine issues of material fact. As such, Welch Allyn's motion for summary judgment must be denied.

## IV. CONCLUSION

The record before the Court is replete with hotly contested issues of material fact, the resolution of which are required in order to decide the parties' claims.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Defendant's Motion for Summary Judgment is **DENIED**.

Dated: March 20, 2003

Michael J. Davis
United States District Court Judge